AO 91 (Rev. 11/11) Criminal Complaint

**Sealed**
Public and unofficial staff access to this instrument are prohibited by court order

# UNITED STATES DISTRICT COURT
for the
Southern District of Texas

United States Courts
Southern District of Texas
**FILED**
*August 12, 2025*
Nathan Ochsner, Clerk of Court

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| Jonathan Ezikeil Hollins | ) | Case No. 4:25-mj-491 |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __February 14, 2025__ in the county of __Harris__ in the __Southern__ District of __Texas__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841(a)(1) - | Delivery Resulting in Death |

This criminal complaint is based on these facts:

See attached Affidavit of probable cause

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Steven Gonzalez, Special Agent
*Printed name and title*

Sworn to before me telephonically.

Date: August 12, 2025

_____
*Judge's signature*

City and state: Houston, Texas

United States Magistrate Judge Peter Bray
*Printed name and title*

Sealed
Public and unofficial staff access to this instrument are prohibited by court order

## AFFIDAVIT OF SPECIAL AGENT STEVEN GONZALEZ IN SUPPORT OF CRIMINAL COMPLAINT

Your affiant, Special Agent Steven Gonzalez, being duly sworn, deposes and states the following:

I, Steven Gonzalez, am a Special Agent (SA) of the United States Drug Enforcement Administration ("DEA"), a law enforcement officer within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations and to make arrests for offenses enumerated in 18 U.S.C. § 2516.

I have been employed by the DEA since October 2016 and have received specialized training while attending the DEA Training Academy in Quantico, Virginia, concerning violations of the Controlled Substances Act within Title 21 of the United States Code. Specifically, while there, I received several hundred hours of comprehensive, formalized instruction in such matters as narcotics identification, detection, trafficking, and interdiction; money laundering techniques; and asset identification, seizure, and forfeiture. Prior to being employed by the DEA, I was a technical writer for an aerospace engineering firm located in Stafford, Texas for approximately one year.

I am assigned to the DEA Houston Division Office (HDO), High Intensity Drug Trafficking Areas ("HIDTA"). HIDTA is a multi-agency task force that investigates the illegal trafficking of controlled substances and is comprised of agents and investigators from the DEA as well as from state and local law enforcement personnel assigned as Task Force Officers ("TFOs"). Specifically, I have been assigned to the DEA HDO HIDTA Fentanyl / Overdose Task Force, which is tasked with investigating cases that pertain to fatal overdoses resulting from fentanyl toxicity.

In approximately April 2025, the DEA HDO HIDTA Group H-31 began an investigation with the Pearland Police Department (PPD) regarding the death of G.P., an adult male henceforth referred to as DECEDENT, who died of a fentanyl overdose on the night of Valentine's Day, February 14, 2025 or the early morning hours of February 15, 2025.

In the early morning on February 15, 2025, PPD Officers responded to the initial call for service regarding the DECEDENT's fatal fentanyl overdose which occurred at the DECEDENT's residence located in Pearland, Southern District of Texas. Responding PPD officers identified DECEDENT by his Texas Driver's License and through D.F., a friend called 911 after discovering DECEDENT's body. Next to the DECEDENT's body, officers found a white powder that field tested positive for fentanyl and a used syringe.

On February 17, 2025, the County of Galveston's Medical Examiner's Office (CGMEO) performed an autopsy on the DECEDENT's body. The CGMEO autopsy revealed that the death resulted from the toxic effects of ethanol and fentanyl. Affiant spoke to CGMEO Chief Medical Examiner Erin Barnhart, M.D., who stated that Powell would not have died but for the fentanyl.

PPD Detective Chad O'Neil interviewed D.F. at the scene of DECEDENT's overdose and again on February 17, 2025. Affiant believes D.F. is credible and reliable because she was the reporting party and investigators were able to independently verify many aspects of her statement. D.F. stated that she and DECEDENT have been friends since the fourth grade. D.F. stated that DECEDENT has struggled with drug addiction in the past. D.F. stated that on the night of February 14, 2025, DECEDENT asked her for a ride to get drugs. D.F. stated that she gave DECEDENT a ride and that DECEDENT was navigating using his phone. D.F. stated that when they arrived at the dealer's house, DECEDENT called the dealer and then went inside. A few moments later, the DECEDENT returned to the car and asked D.F. to go inside with him. D.F. and DECEDENT went into the house and met the dealer and the dealer's girlfriend. D.F. stated that the dealer wanted to be paid via CashApp to his girlfriend's account. D.F. stated that the DECEDENT used D.F.'s phone and CashApp account to send the money to the dealer's girlfriend. D.F. showed Detective O'Neil the CashApp transaction on her phone. The transaction was for $30 to account Carla D $prettycarla21. D.F. stated that she then dropped DECEDENT back off at his house and D.F. went home. D.F. stated that when she got home a few minutes later, DECEDENT called her and they were on the phone for approximately 3 hours. Detective O'Neil viewed DECEDENT's call history and saw that the last call was a 182-minute call to D.F. on the night of February 14, 2025. D.F. described the dealer's house as being on Glen Lee on the left after you pass Truxton. D.F. described the house as a single-story residence with a black steel gate and a mud pit inside the gate.

Detective O'Neil reviewed DECEDENT's cell phone and discovered location data that showed the phone traveling to 5903 Glen Lee Drive, Humble, Southern District of Texas 77396 on the night of February 14, 2025. Detective O'Neil drove to 5903 Glen Lee Drive, Humble, Southern District of Texas 77396 and observed that the house matched the description provided by D.F.

Detective O'Neil spoke to DECEDENT's mother who stated that she has access to a tracking app called Life360 on DECEDENT's phone. Affiant knows from training and experience that Life360 is an application that allows family members to track and record the live location of other family members. Detective O'Neil obtained the Life360 tracking information for DECEDENT's phone and observed that the app recorded DECEDENT's last trip as traveling to a longitude and latitude that matches 5903 Glen Lee Drive, Humble, Southern District of Texas 77396 on the night of February 14, 2025.

Affiant was already investigating a fentanyl dealer named Jonathan Ezikeil HOLLINS aka: "Zeke" who deals fentanyl from 5903 Glen Lee Drive, Humble, Southern District of Texas 77396. Affiant provided a photograph of HOLLINS to Detective O'Neil. Detective O'Neil administered a photo lineup to D.F. who identified HOLLINS as the dealer who sold the drugs to DECEDENT on the night of February 14, 2025.

Detective O'Neil reviewed text messages on DECEDENT's phone. Detective O'Neil found a text message thread from the night of February 14, 2025 between DECEDENT and a person who identified themselves as ZEKE in the text messages. Affiant has also reviewed the text messages. The text message thread contains messages that Affiant recognizes from training and experience to be consistent with narcotics purchases by DECEDENT from ZEKE. At 9:06pm DECEDENT sent ZEKE a text stating "omw," which affiant knows from training and experience means "on my way." Then at 9:42pm on February 14, 2025, DECEDENT sent ZEKE the message "$prettycarla21,"

Davis's CashApp account. Detective O'Neil obtained a state search warrant for the location data from the phone number associated with ZEKE for the night of February 14, 2025. The location data shows that the phone was present at 5903 Glen Lee Drive, Humble, Southern District of Texas 77396 on the night of February 14, 2025.

Detective O'Neil obtained records from CashApp for account Carla D $prettycarla21. The records reflect that the account belongs to Carla Davis and has a phone number associated with it. Detective O'Neil obtained a state location tracking search warrant for the phone number. Detective O'Neil received location data for the phone number from the provider. The location data showed that the phone was present at 5903 Glen Lee Drive, Humble, Southern District of Texas 77396 on the night of February 14, 2025.

Based on the foregoing information, Affiant initiated surveillance at 5903 Glen Lee Drive, Humble, Southern District of Texas, 77396. Affiant observed a BMW and Porsche regularly arrive at the house around 3pm every day and leave around midnight. State registration records reflect that the Porsche is registered to Carla Davis.

Over the past two months, Affiant has conducted physical and electronic surveillance on the BMW and the Porsche. Affiant has observed Jonathan Ezikeil HOLLINS and Carla Rochelle DAVIS driving both vehicles on almost a daily basis. Affiant has never observed anyone else drive either vehicle.

Based on the foregoing, your affiant respectfully submits that probable cause exists to believe that Jonathan Ezikeil HOLLINS has committed a violation of Title 21 U.S.C. Section 841 (a)(1), specifically; delivery of a controlled substance resulting in death.

I declare under penalty of perjury that the foregoing is true and correct.

Steven Gonzalez
Special Agent
Drug Enforcement Administration

Sworn to and subscribed before me telephonically the ___12th___ day of August, 2025, and I hereby find probable cause.

United States Magistrate Judge Peter Bray
Southern District of Texas